Second case today is case number 4110553, Grotenhuis v. Savoree, for the appellant Larry Lefebvre and for the appellee Brent Holmes. Please proceed. May it please the court, counsel. Stan Grotenhuis brought this case in the circuit court seeking to enforce a million dollar guarantee that had been executed by the defendant Mark Savoree. The guarantee was to secure the payment of loans that Kevin Byer had obtained to abide the dealerships that were previously owned by Mr. Savoree. The defendant, Mr. Savoree, filed a motion to dismiss based on the doctrine of res judicata. The trial judge initially denied that motion. On motion to reconsider, the court granted the motion and we're here on appeal as a result of that ruling. The doctrine of res judicata is generally analyzed under the restatement second of judgments. The restatement second of judgments, section 22, provides that where the defendant may interpose a claim as a counterclaim, but he fails to do so, he is not thereby precluded from subsequently maintaining his claim. Subsection 2 says that a defendant who may interpose a claim as a counterclaim in an action, but fails to do so, is precluded after the rendition of a judgment in that action from maintaining an action on the claim if the counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court or the relationship between the defendant and the defendant. The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial judgment. I believe the defendant admits in his brief that once he filed his counterclaim in the original case to Grotenheiss's claims that the certificate of deposit that was ultimately adjudicated in Grotenheiss No. 1 was not properly applied, that Stan had to file a counterclaim in Grotenheiss No. 1, which he did not do. That statement is on page 21 of the appellee's brief. It says, Stan should have alleged in the alternative that if the salaries were correct and the $1 million CD could not be properly applied to the debts that the bank applied it toward, in that event the bank was entitled to a judgment against Mark on the $1 million guarantee so that Stan could fully collect the $1,895,000 Groten note from Mark pursuant to his two guarantees. Illinois does not recognize a mandatory counterclaim rule. So the restatement of second of judgments applies because we don't have a mandatory counterclaim rule. The judgment in the first case adjudicated the security for the guarantee, which is the subject matter of Grotenheiss No. 2, the case before your honors, but it didn't adjudicate the liability under the $1 million guarantee. Well, counsel, there were several loans that were rolled into subsequent loans done by the bank. That's correct, isn't it? Yes. And when the bank did that, as I understand it and recall, they took a Ronan debt of $2.5 million and then rolled that, if you will, into a debt of about $1.89 million. That's what happened. That's all there was left as far as what Ronan owed because of what the bank did in rolling these notes into new notes with new debtors. That's agreed. Well, why isn't that dispositive then? Because there were two guarantees. The first guarantee was limited to $1.5 million, which is less than the $1,800,000 principle. It doesn't really matter, does it, whether there's two guarantees or three. All the guarantees are for are for Ronan's indebtedness, which the bank itself transformed in from $2.5 and $1 million, it's actually $3.5 with two different notes, into one note for $1.89. And so that, doesn't it make sense that therefore is all that Savarit Guarantee? Yes, I agree with that principle. Well, why isn't that dispositive? We've only been given a judgment for $1.5 million, not $1.89 million on the guarantee. So we still have $350,000 left over that the second guarantee that's never been adjudicated, the $1 million guarantee that has never been adjudicated, the liability of Mark under that guarantee has never been adjudicated. So we still have $350,000 left to collect. The trial court originally did not award a $1.8 million judgment on the Ronan Guarantee. Are you sure about that? I am sure that the principal amount of the judgment on the $1.5 million guarantee was for the principal amount of $1.5 million. And so the judgment, I think, which was $1.8 million, was interest on top of the principal? Yes. So that issue that we just discussed has yet to be adjudicated. In fact, it's a separate issue. So the first reason I think that we can do this is that the duty to file on the $1 million guarantee, there was no duty to do it, first of all, in Grotenheist No. 1. Secondly, the need to do it didn't arise until Savory filed his counterclaim where he claimed that the CD, he could get the CD back, basically, is what he wanted. And this court, and we haven't challenged that, this court says, you didn't get the CD back, you've got to apply it to the other judgments, the Sullivan 4 judgment, and I don't know, the Terre Haute 4 judgment or whatever. But that left a deficiency, then, under the Ronan judgment, which now, the second guarantee that's never been adjudicated, the million dollar guarantee, is still out there and is still subject to adjudication. And I think that the restatement of judgments, Section 22, stands directly on that proposition. The second reason is that, another reason to reverse the trial judge, is that the issues were different in Grotenheist No. 1 and Grotenheist No. 2. In Grotenheist No. 1, neither litigant attached a copy of the million dollar guarantee to their complaints, or their counterclaims, or their affirmative defenses. Therefore, the suit wasn't on that instrument because the rules of court provide, the Illinois Court of Civil Procedure provides that if you're going to make a claim based on a document, you need to attach it. That was never done. The case of LP26, LLC, I think is instructive. Because that case makes the point that there's a difference between the adjudication of the security and the adjudication of the note itself. That case basically tells us that even if we're applying the transactional test, which we can see is the res judicata test to determine whether the two clauses of action are the same, you don't construe it as broadly as Judge Rush did. And I think that's where he made the mistake, is he construed that broadly by saying, well, we could have sued on all of these pieces of commercial paper in the first lawsuit, and we didn't, therefore we're barred. The LP26, LLC case stands for the proposition that the transaction should be defined more narrowly. The note is a transaction, the guarantee is a transaction, the security interest is a transaction, and that they have different purposes. Doesn't that promote piecemeal litigation? Obviously those are interconnected. It doesn't, it doesn't, because if the first litigation resulted in satisfaction of all of the debt, we wouldn't have to have the second litigation. And it's sort of like a mortgage foreclosure. If you go in on a mortgage foreclosure and you don't name the guarantors, which you have the right to do, and you sell it and you don't realize the full value of the property, then you've got the second lawsuit on guarantee. But if the foreclosure results in satisfaction of the obligation, then you avoid the second lawsuit. I almost think you'd have to have a crystal ball judge to have made the additional counterclaim after Savery says, well, I want my CD back, to know that we were going to have to file this counterclaim that could have been filed but wasn't. So I was sort of involved in that litigation. I didn't try the case, but I worked on the appeal, and it never occurred to me that I should recommend that we file a counterclaim based on the million dollar guarantee, because based on the theory of Grotenheiss in the first case, that guarantee was satisfied. But when this court said to apply the CD not to the buyer's notes, but to the guarantees or the other judgments against Mark, which were two other judgments against Mark for fairly substantial amounts, that's what resulted in and created the deficiency that we're now seeking to adjudicate. The third reason that this court should reverse the trial court is because in the guarantee itself, Mark waived the defense of Ray's judicata, and the guarantee itself provides that that waiver should be enforced and this court should enforce it. That's the extent of my argument. I believe that there's three good, solid reasons why this court should reverse the trial court. I think Judge Resch did a good job with it. I think he analyzed it the best he could. But I think he was too narrow in his definition of the transaction based on the cases that we submitted to the court here, and I think he was too narrow based on the fact that we don't have a compulsory counterclaim, and the restatement allows us to proceed in this fashion. Thank you, counsel. You will have rebuttal. Mr. Holmes. May it please the court and counsel. I represent Mark Savory in this matter. The doctrine of Ray's judicata was fully and carefully analyzed and correctly applied by the circuit court. The same judge who sat in all the proceedings, the first go around, that resulted in the judgment against Mark Savory, Karen Savory, and which was then appealed to this court, and then this court issued its decision, which then resulted in a petition for rehearing by Stanton and by the bank. So the transaction itself, the bank's treatment of that transaction, the conduct of the parties in Grotenheiss No. 1, and the appeal, including the petition for rehearing filed by the bank and Stanton, their failure to seek leave to appeal from the denial of that petition for rehearing, coupled with the controlling Supreme Court decisions in Rhine, River Park, and Hudson, warrants the conclusion that Ray's judicata bars Grotenheiss No. 2. Judge Resch initially denied the motion to dismiss, and then a very detailed motion for reconsideration was filed. And both parties extensively briefed this whole entire issue and discussed how this transaction, which was basically a single unified transaction regarding the loan of money to purchase stock that Mark had owned, how does that all apply to what was done and what could have been done, what should have been done? And Judge Resch, after analyzing that, reading with great detail the controlling Supreme Court cases on the subject, as well as appellate court cases, which Stanton cited, issued a very thorough and detailed opinion letter, and that is attached, of course, to Appellant's brief. The bank treated this as one transaction, the March 1, 2007 loan, then the January 23, 2008 issuance of additional notes, renewals or replacements of the original note, and Mark's personal guarantee, indebtedness, execution of the guarantee was all part of this loan transaction. Please remember that this was a case in which the bank not only, in Grotenheiss 1, not only went after Ronan and the buyers, the makers of the notes, they not only had taken and applied the collateral that had been applied to notes, but they also then made the decision and the determination to sue Mark and Karen, his wife, on their personal guarantee, indebtedness, execution of the guarantee. They were going after them and saying, you owe us money and we want justice. We want judgments against you. In Rind, the Illinois Supreme Court stated that every matter actually determined, but res judicata applies and extends also to every other matter that might have been raised and determined. Hudson in the Illinois Supreme Court said the same thing. Res judicata extends not only to what was actually decided in the first action, but whatever could have been decided. And then in the River Park case, the same thing. The Illinois Supreme Court basically took the suggestion of Justice Cook of this court in an earlier case, which said we think that the state of Illinois, the court should reject and discard the old same evidence test and adopt the transaction, same transaction test as provided under the Illinois Supreme Court. Under the restatement of judgments. And in River Park, the Illinois Supreme Court adopted the restatement on the transactional test and basically said we're not going to have any test anymore, same cause of action test, identity of cause of action analysis under the more stringent standards of the same evidence test. We're going to use the transactional analysis so that separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts regardless of whether they assert different theories of relief. Counsel in their brief and in their reply brief never even address, never even suggest how do you distinguish River Park? How do you take the controlling judgment of the Illinois Supreme Court and ignore it? They've literally ignored the Illinois Supreme Court. Judge Resch didn't ignore the Illinois Supreme Court. He used the Illinois Supreme Court cases and made the right decision. In the River Park case, because here counsel is suggesting that well now Mark executed a million dollar guarantee, that's one transaction. Then what, 30 seconds, one minute later he executes the other guarantee all on March 1st of 2007 at the closing on this loan and they're saying those are different transactions and that they can sue at their pleasure in a multiplicity of loans. Are those lawsuits? No. The Illinois Supreme Court in adopting, well applying and saying this is the only test we're going to hereafter use, the transaction test, the transactional analysis, adopts and cites to the restatement second of judgments at section 24 dimensions of the claim for purpose of the bar. When a valid and final judgment rendered in an action extinguishes a plaintiff's claim pursuant to the rules of merger or bar, the claim extinguished includes all rights of the plaintiff, this would be all rights of the bank, all the rights that stand to remedies against the defendant, that would be Mark, with respect to all or any part of the transaction or series of connected transactions out of which the action arose. And the restatement at section 25 of judgments states that the restatement further provides that the claim is extinguished under these principles even though the plaintiff, the bank or Stanton in the second case is prepared to present evidence or grounds or theories not presented in the first action or to seek remedies or forms of relief not demanded in the first action. That is the controlling law in the state of Illinois. And Judge Resch properly concluded that this was arising out of the same transaction, the same, if you will, the same loan and the renewal of the loan. It was a single core of operative facts. That's exactly the way the bank treated it in Broken Heist number one. The doctrine is there to promote the finality of litigation between the parties and to avoid, as in this case, Mark facing the multiplicity of suits. As the court in River Park pointed out, that if you did not, that the purpose of res judicata is to promote judicial economy by requiring parties to litigate in one case all rights arising out of the same set of operative facts and also to prevent the unjust burden that would result if a party could be forced to relitigate what is essentially the same case. And here we have exactly that. The burden of Mark having now to face again another lawsuit and to face not only the claim liability but the tens of thousands of dollars that they want to pile on top of him on attorney's fees. Now, Judge Resch carefully considered and even in his opinion cited the cases that Stanton submitted. They were not Supreme Court cases. They were appellate court cases. And Judge Resch carefully considered them and distinguished them and pointed out that they were not in point. For instance, the National Recovery versus Peelett case. That was a two-page opinion that really doesn't apply to this case because it involved an alleged defective assignment and then the plaintiff went out later after having the case dismissed because of a defective assignment then attempted to file a second case. That was thrown out. The appellate court said no. Same evidence test. You should have been allowed to. These are different causes of action because they weren't suing on the first assignment. They're suing on the second assignment. I would question very strongly whether that case would survive the analysis of the Supreme Court in River Park. And there was no discussion, apparently no citing of the River Park case to that court. In the Saxon Mortgage case, again, an appellate court decision. That case is not in point because in the federal case it was involving a breach of contract to sell an investment quality loan or loans. But in the subsequent state court case, totally separate provisions were involved regarding a refund of unearned premiums. And moreover, there was an acquiescence in the claim splitting in that case. So that case clearly is not applicable. And then the case decided by counsel in oral argument, the LP-26 case. That doesn't apply either because in that case, action number one was a foreclosure on real estate located in Cook County. It was an NRAM action. The guarantor was not named, other than simply saying we've got an action here against this real estate we're going to foreclose on and seek to get a judgment. Later on, they bring a second case. This time they bring in the guarantor in personam liability and say you are personally liable for X number of dollars to our bank and we want a judgment. And the court there said, and I wonder if this would survive scrutiny of the Illinois Supreme Court in the Rime, River Park, and Hudson case. But we don't have to get there because this case, LP-26, again is distinguishable on its facts. There was only one case, the second case, where the plaintiff was attempting to impose personal liability on a guarantor, on the actual guarantee. In this case, the bank is attempting to do it twice. They did it the first time around with regard to the lawsuit, and then because they didn't like part of your decision in Grotenheist number one, and they failed to get the attention of the court to grant a petition for rehearing, and instead of filing a petition for leave to appeal to the Supreme Court, they then say, well gee, I guess we get to push the reset button and let's go after Mark again in lawsuit number two. That's not the way it works. And Judge Resch, after very carefully and thoroughly considering the law, decided that it could not work that way. As he pointed out, once having elected to sue Mark, the plaintiff could not hold back for later litigation, one action which was at the core of the cause of action sued upon in Grotenheist number one. Counsel indicates that, well, restatement of judgments 22 should apply, and Mark was saying, well maybe we should have filed a counterclaim in Grotenheist number one. We're not asserting that at all. What we're saying is, when you look at Ryan, when you look at Hudson, when you look at River Park, and you bring Mark before the bar of the court, and you say, Mark, you owe us hundreds of thousands of dollars, millions of dollars in personal liability because you guaranteed this loan, then those cases say you need to bring any and all claims and causes of action that you have against Mark. And if you don't, or if you didn't quite figure out all of the potential permutations for how the case might ultimately come out, that's not Mark's problem. That's not the court's problem. That's your problem, and you live with it. We have one case. You don't get to haul them in because you didn't like 100% of the outcome in the first case, so you get to try to do a redo. But moreover, and I guess what is even more compelling as to why race judicata applies in this case, is because in Grotenheist number one, not only was Mark defending against the guarantees, but he also was saying, wait a minute, Karen and I own a million dollar CD that we've had on deposit at your bank for a long time, and you, we put up our money, our own million dollars. This wasn't something we were selling to the buyers. This is our own money, and we put up this CD. But you know what you did with that CD? We guaranteed Ronen money, Ronen obligation. You took our CD and you went over and you applied it to a loan that you gave out individually to the buyers months later after this March 1, 2007 loan transaction. So now not only do we have in front of the court all of the issues, not only the guarantees, but also the question of did you apply Mark and Karen Savaree's CD appropriately or not? You have it all before the court, and the court could have done complete justice between the parties if you take the bank's point of view on this. The bank knew or should have known that they weren't applying that CD properly. That guarantee was to Ronen. It wasn't to a loan they make to buyers or somebody else. But they took their CD and did that. Wouldn't you think they'd wake up in the middle of the case and think, you know what, we better back off a little bit. We've been too aggressive on this. We've done something we shouldn't have done. And if we want to collect from Mark the 1.895, we say that we can get a judgment against Ronen on, well then we better back off on this, take the CD back and say, you know, sorry, Judge, we're going to apply it somewhere else and we'll go ahead and get a judgment for 1.895 million. But they didn't. They wanted it both ways. They wanted to nail him on his guarantees and they wanted to keep his CD and apply it to debt that he didn't guarantee. And when the appellate court says, you get your judgment, but guess what, you don't get the CD because you didn't apply it properly. Now they say, oh my gosh, they caught us with our hand in the cookie jar. Now they say, well, now let's start this over again. No, that's not the way it works. There is no waiver of res judicata. Judge Resch, again, very carefully and thoroughly considered that issue and that argument and looked at the guarantee that Mark signed and the paragraph 7 that Stanton claims contains a waiver of the res judicata. Judge Resch said, no, that's not what it says. And two cases we've cited from this court, one is the City National Bank of Clipston v. Russell case, stated that in any guarantee, because a guarantee will be strictly construed in favor of the guarantor, because really he's only backstopping, he's only backstopping the potential, the loan. He's not the maker of the loan. He's not the guy that's, you know, going to have to, in all instances, pay this if it doesn't pay now because there's also security that's posted. And then we cited the Farmer State Bank of Dorring case. The law will not expand a guarantor's liability by construction. Judge Resch read paragraph 7 and said, it says the undersigned waives any and all defenses, claims, and discharges of borrower or other obligor pertaining to the indebtedness except defensive discharge. So in other words, he's not going to raise defenses that the borrower might have, including res judicata. But nothing in that paragraph says the undersigned waives any and all defenses that undersigned might have or that the guarantor himself might have. So Judge Resch got it correctly. Then they cite in this case, well, how about paragraph 8? Well, we say that's waived. Wait a minute. You didn't raise that. You've never raised it. And quite frankly, that's, in res judicata, that's beside the point. What might have supported a claim, had you properly brought it in growth heist number 1, we don't analyze res judicata and say, well, gee, we had a great case and there's language in this guarantee that supports it. I mean, the losing plaintiffs in Rhine and in Hudson and in River Park have exactly the same thing. We've got great claims that have yet to be adjudicated. But you don't get to bootstrap it and say, gee, it's all here. No. It may be here, but why didn't you bring it up in growth heist number 1? That's when you had the opportunity to do that. We've pointed out the public policy. And I don't think you need to get to this point, but if you were somehow to say that paragraph 7 is different than the way that it reads, or Judge Resch found that it reads, I think the public policy of this state should bar parties from waiving res judicata. Because this is a doctrine that directly implicates the courts. What if they assigned 10 notes on that March 1st date? And the bank said, well, this is one loan transaction. We loaned it all out, put it all in their bank account at one time. We've got 10 different notes. Sue on one note, get all the attorney's fees piled up on it, and then, okay, now we'll sue on note number 2, then we'll sue on note number 3. No. The court has its own obligation and responsibility. I see my time is up. Thank you very much.  I thought it was interesting in distinguishing one of my cases. Consul suggested that it was distinguishable because the mortgage proposal was an in rem action, and the suit on the guarantee was a suit on a guarantee for a judgment against the individual. When this court adjudicated the allocation of the certificate of deposit, that was an in rem action. It did not adjudicate the personal obligation under the million dollar certificate of deposit. Second thing in rebuttal, we didn't ignore the Supreme Court. We've cited Supreme Court cases for the proposition that the transactional test applies to a determination of whether or not we're barred under the Doctrine or Res judicata. But we have cited cases that use what the Supreme Court used in its analysis, which is the restatement section 22, to show how cases that have applied that transactional test have agreed with our position that we do have the right to proceed on the million dollar personal guarantee which has not been adjudicated. Consul's suggestion that we should have figured out that we had to file a claim on the million dollar personal guarantee, I believe misses the point. In their own brief, they state at page 21, Stan should have alleged in the alternative that if the salaries were correct, and the one million dollar CD could not be properly applied to the debts the bank had applied it to. Until they filed that counterclaim, there was no need for the bank to raise that issue. And since we don't have a mandatory counterclaim provision in Illinois, there was no need to raise it by counterclaim. The case of Carey v. Neal, Cortina, and Associates, which is cited in the briefs, states that the court should carefully examine the circumstances presented in a specific case to ensure that a party is not precluded from litigating a claim simply because it might have been raised in a prior litigation. We believe that we have the right to proceed, that Judge Rest was wrong, that he narrowed the transactional analysis to a point that's not sustained by the cases that we've set forth. I have no further rebuttal. I do refer to my brief because I'm just going to start repeating what's in the brief. Okay, thank you to both of you. The court will take a matter of advisement and we stand in recess.